UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

FIVE BOROUGH BICYCLE CLUB, et al.,

                                           Plaintiffs,    PRETRIAL ORDER

                                                          Case No. 07 CIV. 2448 (LAK)

           -against-

THE CITY OF NEW YORK, et al.,

                                Defendants.

-------------------------------------------------------------------- x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED #: 5/8/09

      The parties having conferred among themselves and with the Court pursuant to Fed. R. Civ. P. 16, the following statements, directions and agreements are adopted as the Pretrial Order herein.

## I. NATURE OF THE CASE

      Plaintiffs are six individual bicyclists and the Five Borough Bicycling Club ("5BBC"). Defendants are the City of New York, Raymond Kelly, the Commissioner of the New York City Police Department ("NYPD"), and four other members of the NYPD. Plaintiffs claim that Defendants have violated their First Amendment rights of association, expression and travel, their Fourteenth Amendment rights of due process and equal protection under the laws, and their state law right to travel by bicycle.

      Specifically, Plaintiffs claim that Defendants have selectively directed law enforcement actions against participants in a bicycling event known as Critical Mass held monthly in Manhattan, including certain of the individual Plaintiffs, in retaliation for the exercise of their First Amendment rights of expressive association and freedom of speech. In addition, Plaintiffs claim that their First and Fourteenth Amendment rights are

22960644v8

violated by Defendants' amendment and enforcement of the "Parade Rules," New York City Administrative Code § 10-110 and rules promulgated thereunder, with respect to group bicycle rides. Further, Plaintiffs claim that Defendants have violated Plaintiffs' rights under New York State Vehicle and Traffic Law ("VTL") §1231, which grants bicyclists all of the rights applicable to motorists except those that by their nature have no application to bicyclists.

Defendants deny all of Plaintiffs' claims. Defendants maintain that the Parade Rules are valid time, place and manner restrictions that do not violate plaintiffs' rights of association, expression and travel. Defendants maintain the Parade Rules do not constitute a prior restraint, are not vague and do not violate due process. Defendants maintain that their policing of the monthly Manhattan Critical Mass event was appropriate, and the enforcement actions taken against some of the individual plaintiffs were not retaliatory nor did they constitute selective enforcement. Defendants also maintain that they have not denied plaintiffs any rights they may have under VTL § 1231.

Plaintiffs seek injunctive relief requiring, among other things, that Defendants be enjoined (a) from taking discriminatory enforcement actions against any individual on the basis of actual or perceived affiliation with any bicycling group, organization or event; (b) from enforcing the Parade Rules and related regulations and policies in a manner that violates Plaintiffs' rights; and (c) to maintain records of certain instances when groups of bicyclists are subjected to law enforcement. Plaintiffs seek an independent monitor to review and evaluate Defendants' compliance with the requested injunction. Plaintiffs also seek an award of attorneys' fees.

2

## II. JURY/NON-JURY

This is a non-jury trial. Plaintiffs estimate that they will need four trial days to present evidence. Defendants estimate that they will need three trial days to present evidence.

## III. STIPULATED FACTS

1. Manhattan Critical Mass is a group bicycle ride that typically departs from Union Square Park at approximately 7:30 p.m. on the last Friday of each month.

2. Plaintiff 5BBC is a not-for-profit bicycle club that promotes group bicycling in New York City by organizing group bicycle trips and through other activities. 5BBC organizes approximately 250 group bicycle rides to take place at least in part within New York City each year, eleven of which in the period since January 2004 included 50 or more participants. 5BBC has applied to the New York Police Department ("NYPD") for a parade permit four times, and has been granted a permit three times. One permit application by 5BBC is currently pending. NYPD has never denied a parade permit application submitted by 5BBC, and has never denied 5BBC permission to conduct a group bicycle ride.

3. Plaintiff Kenneth T. Jackson is a Professor of History at Columbia University and a preeminent scholar of New York City history. Jackson typically organizes one group bicycle ride each year, on which he conducts a nighttime tour of New York City for approximately 250 of his students and others. In 2007, Jackson arranged (or had someone arrange) to have an ambulance accompany this annual group bicycle ride. In 2007, he applied for and received a permit for his annual ride. The NYPD has never denied a parade permit application submitted by Jackson, and has never denied Jackson permission to conduct the "Columbia All-Night Bike Ride." Jackson has

3

never participated in a Critical Mass ride in Manhattan or elsewhere.

4.      Plaintiff Sharon Blythe is a resident of New York, New York. She
participates in group bicycle rides in New York City. Blythe participated in Manhattan
Critical Mass rides from 2001 to 2005. Blythe was arrested for disorderly conduct (PL
240.20(5)) and parading without a permit (AC 10.110) during a Manhattan Critical Mass
ride in July 2005, and has not attended a Manhattan Critical Mass ride since her arrest.
All of the charges against Blythe related to this arrest were dismissed. Blythe rode on the
FDR Drive during a Manhattan Critical Mass ride on July 30, 2004, and rode over the
Queensboro Bridge during a Manhattan Critical Mass ride on October 31, 2003.

5.      Plaintiff Josh Gosciak is a resident of New York, New York. He
participates in group bicycle rides in New York City and is a member of 5BBC. Gosciak
participated or sought to participate in Manhattan Critical Mass rides during the period of
January 2004 through November 2004. He also observed a Manhattan Critical Mass ride
in May 2006 and participated in a Manhattan Critical Mass ride in March 2009. Gosciak
was never arrested or issued a summons at a Manhattan Critical Mass ride. Gosciak is a
member of 5BBC. Since January 1, 2004, Gosciak has not led a group bicycle ride
sponsored or organized by 5BBC in which fifty or more bicyclists participated. Gosciak
has never applied for a parade permit from the NYPD.

6.      Plaintiff Madeline Nelson is a resident of Brooklyn, New York. She
participates in group bicycle rides in New York City. Nelson participated in Manhattan
Critical Mass rides on the following dates: October 29, 2004; November 26, 2004;
January 28, 2005; February 25, 2005; March 25, 2005; May 27, 2005; June 24, 2005;
July 29, 2005; August 26, 2005; September 30, 2005; October 28, 2005; November 25,
2005; December 30, 2005; March 31, 2006; April 28, 2006; May 26, 2006; June 30,
2006; July 28, 2006; August 25, 2006; October 27, 2006; November 24, 2006; and May

4

30, 2008. Nelson was arrested at the Manhattan Critical Mass rides in February 2005 for disorderly conduct and parading without a permit and in December 2005 for disorderly conduct and parading without a permit. She received summonses at Manhattan Critical Mass rides in November 2006 for an improperly-mounted taillight and in May 2008 for not keeping far enough to the right (34 RCNY 4-12[p][3]). Nelson's bicycle did not have a taillight at the time she was issued a summons in November 2006. Nelson rode over the Queensboro Bridge during a Manhattan Critical Mass ride on June 24, 2005.

7.     Plaintiff Elizabeth Shura is a resident of Brooklyn, New York. She has participated in group bicycle rides in New York City. Shura participated in Manhattan Critical Mass rides on the following dates: September 24, 2004; October 29, 2004; November 26, 2004; and December 31, 2004. Shura was arrested during a Manhattan Critical Mass ride in October 2004 for disorderly conduct (PL 240.20(5)) and parading without a permit (AC 10.110). After a trial, Shura was found not guilty of all of the charges related to this arrest. Shura has not participated in a group bicycle ride since May 20, 2005.

8.     Plaintiff Luke Son is a resident of Brooklyn, New York. He participates in group bicycle rides in New York City. Son participated in Manhattan Critical Mass rides from 2005 through 2007. Son received a summons at a Manhattan Critical Mass ride in February 2006 for proceeding through a steady red signal.

9.     Defendant the City of New York (the "City") is a municipal entity organized and existing under the laws of the State of New York. It is authorized by law to maintain a police department, the NYPD, which acts as an agent in the area of law enforcement.

10.    Defendant Raymond Kelly has been the Police Commissioner of the NYPD since January 2002.

5

11.     Defendant James Tuller has served as an Assistant Chief in the NYPD and the Commanding Officer of Patrol Borough Manhattan South since February 2007. In this capacity, Tuller supervises NYPD personnel assigned to police Manhattan Critical Mass rides.

12.     Defendant Thomas Graham is a Deputy Chief of the NYPD and has served as Commander of the NYPD Disorder Control Unit since 1993. In this capacity, Graham has supervised NYPD personnel assigned to police Manhattan Critical Mass rides.

13.     Defendant Daniel Albano has been a Lieutenant in the NYPD assigned to its Legal Bureau since at least 2004. In this capacity, Albano provides legal advice to NYPD personnel assigned to police Manhattan Critical Mass rides.

14.     Defendant Stephen Paragallo was a Deputy Chief in the NYPD assigned as Executive Officer of Patrol Borough Manhattan South from March 2004 through June 2008. In this capacity, Paragallo supervised NYPD personnel assigned to police Manhattan Critical Mass rides.

15.     From September to November 2004, the average number of participants in Manhattan Critical Mass rides was 1,733, while the average police presence was in excess of 533 officers. During that time period, 58 arrests were made and 7 summonses were issued by NYPD officers assigned to Manhattan Critical Mass, for an average of 19 arrests and 2 summonses at each ride. A table showing the numbers of participants, police officers, arrests and summonses from which these averages are derived is attached as Appendix A.

16.     In 2005, the average number of participants in Manhattan Critical Mass rides was 200, while the average police presence was in excess of 158 officers. During that year, 238 arrests were made and 21 summonses were issued by NYPD officers

6

assigned to Manhattan Critical Mass, for an average of 22 arrests and 2 summonses at each ride. A table showing the numbers of participants, police officers, arrests and summonses from which these averages is derived is attached as Appendix B.

17.     In 2006, the average number of participants in Manhattan Critical Mass rides was 170, while the average police presence was in excess of 116 officers. During that year, 24 arrests were made and 450 summonses were issued by NYPD officers assigned to Manhattan Critical Mass, for an average of 2 arrests and 38 summonses at each ride. A table showing the numbers of participants, police officers, arrests and summonses from which these averages are derived is attached as Appendix C.

18.     In 2007, the average number of participants in Manhattan Critical Mass rides was 89, while the average police presence was in excess of 110 officers. During that year, 4 arrests were made and 374 summonses were issued by NYPD officers assigned to Manhattan Critical Mass, for an average of less than 1 arrest and 31 summonses at each ride. A table showing the numbers of participants, police officers, arrests and summonses from which these averages are derived is attached as Appendix D.

19.     From January through August 2008, the average number of participants in Manhattan Critical Mass rides was 31. During that time period, 2 arrests were made and 98 summonses were issued by NYPD officers assigned to Manhattan Critical Mass, for an average of less than 1 arrest and 20 summonses at each ride. A table showing the numbers of participants, arrests and summonses from which these averages are derived is attached as Appendix E.

20.     Of 34 summonses issued by NYPD officers assigned to the June 29, 2007 ride, 26 summonses were issued before 8:00 p.m.

21.     All of the 40 summonses issued by NYPD officers assigned to the July 27, 2007 ride were issued prior to 7:52 p.m.

7

22.     Forty-two of the 45 summonses issued by NYPD officers assigned to the August 31, 2007 ride were issued prior to 8:00 p.m.

23.     Of 59 summonses issued by NYPD officers assigned to the September 28, 2007 ride, 48 summonses were issued prior to 8:15 p.m.

24.     Of 12 summonses issued by NYPD officers assigned to the October 26, 2007 ride, 9 summonses were issued prior to 7:53 p.m., the time at which, according to an NYPD document, the Manhattan Critical Mass ride that evening commenced.

25.     Of 53 summonses issued by NYPD officers assigned to the November 30, 2007 ride, 47 summonses were issued prior to 7:57 p.m., the time at which, according to an NYPD document, the Manhattan Critical Mass ride that evening commenced.

26.     In connection with the August 27, 2004 Manhattan Critical Mass ride, NYPD arrested at least 260 group bicyclists on charges including violation of NYAC 10-110 (parading without a permit).

27.     The 11 summonses issued at the May 25, 2007 Manhattan Critical Mass ride for violation of New York City Administrative Code Section 10-110 (parading without a permit) are the only summonses for that violation issued by NYPD personnel assigned to Critical Mass details during the period of February 25 , 2007 through August 31, 2008.

28.     Officer Russo issued the following summonses while assigned to Critical Mass detail on April 29, 2005: 424600815-1 [NYC02167]; 424600816-3 [NYC02167]. Officer Bynum wrote the following summons while assigned to Critical Mass detail on April 29, 2005: 424671125-1 [NYC02169]. Officer Gore wrote the following summonses while assigned to Critical Mass detail on April 29, 2005: 424828959-3 [NYC02170]; 424828954-4 [NYC02171].

29.     Brooklyn Critical Mass is a group bicycle ride that typically departs from

8

Grand Army Plaza in Brooklyn at approximately 7:30 p.m. on the second Friday of each month. The NYPD has typically assigned a police detail to Brooklyn Critical Mass since at least October 2004. Brooklyn Critical Mass has no designated leaders or decision-making structure, and the ride does not have a fixed route. Plaintiffs Nelson, Gosciak, Son and Shura have participated in Brooklyn Critical Mass rides.

30.     NYPD officers assigned to Brooklyn Critical Mass rides have directed the participants to proceed through steady red signals. On occasion, participants in Brooklyn Critical Mass rides have, in the presence of NYPD officers, ridden in a group occupying the entire roadway, proceeded outside of bicycle lanes, or taken up stationary positions to prevent intersecting traffic from proceeding through the roadway in which the bicyclists are riding (this is sometimes called "corking"). Participants in Brooklyn Critical Mass rides have engaged in this conduct as recently as July 2008. There have been no summonses issued or arrests made in connection with any Brooklyn Critical Mass Ride.

31.     The NYPD was aware of the following group bicycle rides and group motorcycle rides in advance of the date on which they occurred, and assigned NYPD staff to the rides: Columbia University Bike Race (3/19/2005); Bike For Life to Yankee Stadium (5/13/2005); Free Wheels Ride of Silence (5/18/05); Free Wheels/Time's Up Bike Ride ("Still We Ride") (8/18/05); "Operation Time's Up" ride (8/20/05); 2006 EMS Memorial Bike Ride (5/21/2006); Time's Up – Memorial Ride for Bicyclists Killed in 2006 (1/7/07); Ride to End All Wars (Critical Mass) (3/18/07); Father's Day Cycling Race (6/17/2007); Breaking the Cycle Ride for AIDS (9/30/2007); Time's Up Bicyclist Memorial Ride (1/6/08); Ground Zero Motorcycle Ride (7/26/2008). NYPD anticipated that several hundreds of participants would attend the Free Wheels/Time's Up Bike Ride ("Still We Ride") (8/18/05). NYPD anticipated that several hundreds of participants would attend the "Operation Time's Up" ride (8/20/05). NYPD anticipated that

9

approximately 75 participants would attend the Time's Up – Memorial Ride for Bicyclists Killed in 2006 (1/7/07). NYPD anticipated that between 300 and 600 paticipants would attend the Father's Day Cycling Race (6/17/2007). NYPD anticipated that approximately 500 participants would attend the Ground Zero Motorcycle Ride (7/26/2008).

32. In 2006, NYPD and the New York City Departments of Health and Mental Hygiene, Parks and Recreation, and Transportation issued a report entitled "Bicyclist Fatalities and Injuries in New York City: 1996-2005" (the "Joint Report"). After the issuance of the Joint Report, a follow-up analysis was conducted of 211 of the 225 incidents involving bicyclist fatalities included in the Joint Report. The analysis included a review of, among other things, the circumstances surrounding each such incident for which such information was available. An insignificant number of the fatalities referred to in the Joint Report, if any, involved an individual proceeding as part of a group of two or more bicyclists.

33. No follow-up analysis was performed on the 3,462 cases of serious injury included in the Joint Report. None of the instances of serious injury referred to in the report involved individuals proceeding as part of a group of two or more bicycles.

34. By operation of the Rules & Regulations of the City of New York, Title 34, section 4-02 (e), VTL §1234, including its subsections (a) – (c), was not applicable in New York City at any time relevant to this litigation. VTL § 1234(a) provides that bicyclists must on certain roadways keep to the right and ride no more than two abreast. Defendants City of New York and Police Commissioner Kelly conceded in a federal court proceeding on October 27, 2004 that VTL § 1234 was superseded by City regulations. From March 2006 through August 2008, summonses citing VTL § 1234 were issued by NYPD officers assigned to the Manhattan Critical Mass detail.

10

35.     Subsection 4-12(p)(3) of Chapter 34 of the Rules of the City of New York applies only on one-way roadways that are at least 40 feet in width.

36.     Of the 73 summonses for violation of 4-12(p)(3) that are confirmed to have been issued by NYPD officers assigned to Critical Mass details, 30 of them were issued to bicyclists traveling on streets narrower than 40 feet or with two-way traffic.

37.     NYPD officers assigned to Manhattan Critical Mass rides issued summonses for violation of subsection 4-12(p)(3) to bicyclists proceeding on the following roadways that are less than 40 feet wide:  Union Square West (10 summonses); East 40th Street (3 summonses); East 51st Street (3 summonses); East 24th Street (1 summonses); East 18th Street (1 summons); East 41st Street (1 summons); 49th Street (1 summons).

38.     NYPD officers assigned to Manhattan Critical Mass rides issued summonses for violation of subsection 4-12(p)(3) to bicyclists proceeding on the following roadways that are not one-way roadways:  Park Avenue South (6 summonses); East 14th Street (3 summonses).

39.     In March 2005, the City of New York initiated a lawsuit against Time's Up! Inc. ("Time's Up!"), a New York not-for-profit corporation, styled *City of New York, Raymond Kelly as Commissioner of the New York City Police Department, et al., v. Time's Up!, Inc., et al.*, Index No. 400891/05 (Sup. Ct. N.Y. Cty.).  NYPD's complaint alleged that Time's Up! advertises, promotes and encourages Critical Mass rides and regularly hosts pre- and post-ride events at its offices, then located at 49 E. Houston Street, New York, New York.  NYPD sought an order enjoining Time's Up! from advertising Critical Mass or promoting Critical Mass.  The court denied the plaintiff's motion for a preliminary injunction.  On February 15, 2007, the suit was discontinued by stipulation of the parties, with prejudice.  NYPD officers have been assigned to take

11

positions outside the office of Time's Up! on several occasions, including October 27, 2006 and September 28, 2007.

40.     On July 17, 2006, a Notice of Opportunity to Comment on Proposed Rule was published in the City Record together with the text of the proposed parade rule amendment. In response to public comments received before the public hearing, the NYPD withdrew its initial rule proposal prior to the hearing and modified that proposal.

41.     On October 18, 2006, a new Notice of Opportunity to Comment on Proposed Rule was published in the City Record together with the text of a modified parade rule amendment, and on November 27, 2006, a public hearing was held on this proposed rule amendment.

42.     In response to public comments made at the public hearing, the NYPD again modified the definition of a "parade." By Notice of Adoption published in the City Record on January 26, 2007, the NYPD adopted rule amendments which define "parade" as "any procession or race which consists of a recognizable group of 50 or more pedestrians, vehicles, bicycles or other devices moved by human power, or ridden or herded animals proceeding together upon any public street or roadway." The parade rule amendments became effective on February 26, 2007.

43.     The one-way avenues in Manhattan below 59th Street are at least 40 feet in width.

44.     Bicycles are prohibited from using the restricted access roadways of the Franklin Delano Roosevelt ("FDR") Drive and the Queensboro Bridge.

45.     In 2006, the New York City Department of Transportation ("NYCDOT") installed 28.6 miles of on-street bicycle routes. In 2007, NYCDOT installed 61.1 miles of on-street bicycle routes. In 2008, NYCDOT installed 81.6 miles of on-street bicycle routes. To date, in 2009, NYCDOT has installed more than 31 miles of on-street bicycle

12

routes.

46.     Since January 1, 2004, no person has submitted to the NYPD an application for a parade permit to conduct a Manhattan Critical Mass ride.

47.     The NYPD has never issued a parade permit to conduct a Manhattan Critical Mass ride.

48.     For the September 24, 2004 and October 29, 2004 Manhattan Critical Mass rides, a designated route for the event was established by the NYPD. The route for the September 24, 2004 ride was established following negotiations between the NYPD and an attorney with the New York Civil Liberties Union who negotiated on behalf of the bicyclists.

49.     Between January 1, 2004 and February 25, 2007, 5BBC sponsored or organized eight group bicycle rides in which fifty or more bicyclists participated.

50.     Since February 25, 2007, 5BBC sponsored or organized four group bicycle rides in which more than fifty bicyclists participated.

51.     Between January 2004 and August 2008, over 100 5BBC day rides were scheduled to occur for which no sign up sheets could be located. Many of these day rides were cancelled due to inclement weather. For those day rides that did occur, there is no specific information available as to the number of bicyclists that participated in such day rides. No more than 49 bicyclists participated in any one of these rides.

52.     In 2004, not including weekend trips or the Montauk Century, 5BBC conducted approximately 142 group bicycle rides and no more than 2225 bicyclists participated in such rides, for an average of 15.67 bicyclists per ride.

53.     In 2004, not including weekend trips or the Montauk Century, 5BBC conducted 2 group bicycle rides that exceeded 50 riders. In 2004, three 5BBC group bicycle rides had between 40 and 49 riders; ten 5BBC group bicycle rides had between

13

30 and 39 riders; 22 5BBC group bicycle rides had between 20 and 29 riders; 52 5BBC group bicycle rides had between 10 and 19 riders; and approximately 48 5BBC group bicycle rides had less than 10 riders.

54.     In 2005, 5BBC conducted 139 group bicycle rides other than the Montauk Century and weekend trips and no more than 2335 bicyclists participated in such rides, for an average of 16.8 bicyclists per ride.

55.     In 2005, three 5BBC group bicycle rides exceeded fifty riders. In 2005, two 5BBC group bicycle rides had between 40 and 49 riders; eight 5BBC group bicycle rides had between 30 and 39 riders; approximately 26 5BBC group bicycle rides had between 20 and 29 riders; 62 5BBC group bicycle rides had between 10 and 19 riders; and 32 5BBC group bicycle rides had less than 10 riders.

56.     In 2006, 5BBC conducted 163 group bicycle rides and not including the Montauk Century, no more than 2410 bicyclists participated in such rides, for an average of 14.79 bicyclists per ride.

57.     In 2006, not including the Montauk Century, 5BBC conducted zero group bicycle rides that exceeded 50 riders. In 2006, three 5BBC group bicycle rides had between 40 and 49 riders; four 5BBC group bicycle rides had between 30 and 39 riders; 34 5BBC group bicycle rides had between 20 and 29 riders; 71 5BBC group bicycle rides had between 10 and 19 riders; and 47 5BBC group bicycle rides had less than 10 riders.

58.     In 2007, 5BBC conducted approximately 155 group bicycle rides and not including the Montauk Century, no more than 2275 bicyclists participated in such rides, for an average of 14.68 bicyclists per ride.

59.     In 2007, not including the Montauk Century, 5BBC conducted zero group bicycle rides that exceeded 50 riders. In 2007, one 5BBC group bicycle ride had between 40 and 49 riders; five 5BBC group bicycle rides had between 30 and 39 riders;

14

approximately 25 5BBC group bicycle rides had between 20 and 29 riders; 73 5BBC group bicycle rides had between 10 and 19 riders; and 44 5BBC group bicycle rides had less than 10 riders.

60.     From January 1, 2008 through August 31, 2008, not including the Montauk Century, 5BBC conducted approximately 105 group bicycle rides and no more than 1508 bicyclists participated in such rides, for an average of 14.36 bicyclists per ride.

61.     From January 1, 2008 through August 31, 2008, two 5BBC rides exceeded 50 riders; one 5BBC group bicycle ride had between 40 and 49 riders; approximately 7 5BBC group bicycle rides had between 30 and 39 riders; 13 5BBC group bicycle rides had between 20 and 29 riders; 61 5BBC group bicycle rides had between 10 and 19 riders; and approximately 26 5BBC group bicycle rides had less than 10 riders.

## IV. PARTIES' CONTENTIONS

The pleadings are deemed amended to embrace the following, and only the following, contentions of the parties:

A. Plaintiffs' Contentions

Plaintiffs have an interest in organizing and participating in group bicycle rides that implicates rights of association, expression and travel protected by the First Amendment. Among the group rides in which Plaintiffs have a protected interest is the Critical Mass ride in Manhattan, which sets off from Union Square Park on the last Friday evening of each month.

Approximately since the Republican National Convention in Manhattan in 2004, Defendants have directed law enforcement actions against individual Plaintiffs and other bicyclists based on their actual or perceived association with the Manhattan Critical Mass ride, and with the intent to inhibit or punish Plaintiffs' exercise of their rights to

15

participate in the ride, or with malicious or bad faith intent to injure Critical Mass participants. Defendants have not directed such actions against other groups that are similarly situated, including riders in similar group bicycle rides. Defendants' actions are not justified by legitimate governmental concerns. Arrests and summonses of individual plaintiffs were not supported by probable cause.

Defendants' actions have chilled Plaintiffs from exercising their rights to participate in Manhattan Critical Mass or merely to ride bicycles in the vicinity of Union Square Park on the last Friday evening of the month due to their fear of being subjected to law enforcement actions for entirely lawful conduct.

Furthermore, Defendants have denied Plaintiffs rights conferred upon bicyclists by VTL §1231, which provides for equal rights and responsibilities of bicyclists and motorists. Defendants have violated Plaintiffs' rights under VTL §1231 by, among other actions, ticketing and harassing certain individual Plaintiffs for exercising their legal right to occupy a lane of traffic while bicycling, and by systematically applying invalid interpretations of the traffic laws.

In addition, Plaintiffs' rights of freedom of travel, association, expression and due process are violated by Defendants' amendment and enforcement of the Parade Rules with respect to group bicycle rides.

Plaintiffs otherwise rest on the statement of facts and legal issues in their Amended Complaint.


### B. Defendants' Contentions

Pursuant to the New York City Charter, the NYPD, an agency of defendant the City, is charged with preserving the public peace and maintaining public safety. The NYPD is also charged with enforcing the Parade Permit provisions set forth in New York

16

City Administrative Code § 10-110 and rules promulgated thereunder. The Parade Rules' application to group bicycle rides of fifty or more individuals in which plaintiffs participate are valid time, place and manner restrictions that do not violate plaintiffs' rights of association, expression and travel. Nor are the Parade Rules unconstitutionally vague or violative of due process. In addition, the application process for obtaining a parade permit does not constitute a prior restraint.

Plaintiffs do not have a state-based private right of action under VTL § 1231. Moreover, even if they had such a cause of action, defendants have not denied plaintiffs any rights they may have under VTL § 1231.

The monthly Manhattan Critical Mass bike ride, which occurs on the last Friday of the month in heavily congested Manhattan, is a unique event; at times these rides have involved hundreds (and thousands) of bicyclists traveling together with no planned route and engaging in rampant traffic violations such as disobeying red traffic lights or riding the wrong way down a one way street. Defendants' policing of the Manhattan Critical Mass rides is consistent with NYPD's efforts to maintain public safety. The defendants have not selectively enforced or retaliated against the individual plaintiffs, and any enforcement action they took against these plaintiffs was not based on plaintiffs' first amendment expressive activities, but rather based on legitimate law enforcement concerns.

## V. ISSUES TO BE TRIED

### Retaliation and Selective Enforcement

1.      *Retaliation.* Whether individual Plaintiffs' participation in Critical Mass rides constitutes a protected interest under the First Amendment, and if so, whether Defendants' enforcement of the laws against individual Plaintiffs was motivated or

17

substantially caused by Plaintiffs' exercise of their First Amendment rights, and Defendants' enforcement actions effectively chilled individual Plaintiffs' from exercising their First Amendment rights

    2.    *Selective Enforcement.* Whether Defendants applied or enforced the laws against individual Plaintiffs in a different manner than they applied or enforced the laws with respect to similarly situated individuals; *and* Defendants' actions were undertaken with an intent to inhibit or punish participants in Critical Mass, or with malicious or bad faith intent to injure Critical Mass participants.

B.    VTL § 1231

    3.    Whether Plaintiffs can assert a private right of action under VTL § 1231.

    4.    Whether Defendants denied individual Plaintiffs "all of the rights . . . applicable to the driver of a vehicle" directing law enforcement action against them and others when they attempted to occupy the roadway in the same manner as motor vehicles, or by applying invalid interpretations of the traffic laws.

C.    Parade Rules

    5.    *Right to Travel.* Whether the Parade Rules actually deter Plaintiffs' travel, or impeding travel is the Parade Rules' primary objective, or the Parade Rules use any classification which serves to penalize the exercise of the right to travel, *and* whether any such government intrusion on Plaintiffs' right to travel is necessary to promote a compelling governmental interest.

    6.    *Right of Association.* Whether the Parade Rules constitute a direct and substantial or significant burden on Plaintiffs' right of association, and are not justified by a compelling governmental interest, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive.

    7.    *Freedom of Speech.* Whether the Parade Rules can be justified without

18

reference to the content of speech at group bicycle rides, and are narrowly tailored – that is, impose a restriction no greater than is essential to the furtherance of a significant governmental interest – and do not close off alternative channels for Plaintiffs' expression.

8.      *Prior Restraint.* Whether the permitting scheme embodied in the Parade Rules impermissibly allows NYPD officers considering such applications to "appraise facts, exercise judgment and form an opinion" and is therefore susceptible to arbitrary application; whether the permitting scheme contains "narrow, objective and definite standards" to guide NYPD officers considering applications for permits for bicycle rides.

8.      *Vagueness.* Whether the definition of a "parade" under the Parade Rules is impermissibly vague and therefore "invites arbitrary enforcement" by officers enforcing the parade rules against bicyclists.

9.      *Due Process.* Whether the Parade Rules violate the Due Process Clause by imposing criminal sanctions without a requirement of knowledge or intent.

19

## V. PLAINTIFFS' EXHIBITS

| | Exhibit Description | |
|---|---|---|
| 1 | Op ed, dated October 28, 2004, "Extremists Have Hijacked the Bike Rides," Police Commissioner Raymond W. Kelly, N.Y. Daily News | Kelly (Feb. 2009) Ex.3 |
| 2 | Letter, dated September 23, 2004, from Michael Scagnelli to Times Up! | Albano (Feb. 2008) Ex. 12 |
| 3 | Letter, dated August 23, 2004, from Michael Scagnelli to Paul White of Transportation Alternatives | Albano (Feb. 2008) Ex. 11 |
| 4 | E-mail, dated March 14, 2007, from Michelle Fredericks to Zac Frank | NYC000242-NYC000243 |
| 5 | Declaration of Lt. Daniel Albano (Oct. 25, 2004) | Albano (Jan. 2009) Ex. 5 |
| 6 | Testimony of Lt. Daniel Albano In Bray (Dec. 8, 2004) | Albano (Jan. 2009) Ex. 6 |
| 7 | E-mail, dated May 15, 2006, from Sheryl Neufeld to Gideon Oliver | Albano (Jan. 2009) Ex. 10 |
| 8 | Summonses issued in connection with Critical Mass | NYC001947; NYC001947.02; NYC001948.03; NYC002020; NYC002020.03; NYC002021; NYC002021.02; NYC002531; NYC002563; NYC014799; NYC014800; NYC014803; NYC014804; NYC025971; NYC025973; NYC025974.02; NYC025974.03; NYC025975; NYC025975.02; NYC025975.03; NYC027104.03; NYC027120 |
| 9 | 2006 NYC Cycling Map | Caneco Ex. 7 |
| 10 | Photograph, 14th Street in vicinity of Union Square and University Place | Caneco Ex. 6 |
| 11 | CD, dated March 5, 2007, "Locally saved websites" | Caneco Ex. 9 |
| 12 | NYPD, et al. report, "Bicyclist Fatalities and Serious Injuries in New York City, 1996 to 2005" | Caneco Ex. 8 |
| 13 | E-mail, dated January 5, 2007, from Joan Scholvin to Joshua Benson | NYCE000315-NYCE000318 |
| 14 | E-mail, dated March 12, 2007, from Zac Frank to Joan Scholvin | NYC000252-NYC000254 |
| 15 | E-mail, dated May 11, 2007, from Joan Scholvin to Zac Frank | NYCE000038-NYCE000040 |
| 16 | 2007 draft Bike Month calendar | NYCE000930-NYCE000954 |

| 17 | Application for Parade Permit (Rev. 06-07) | Jackson Ex. 4 |
|----|--------------------------------------------|---------------|
| 18 | Letter, dated August 29, 2005, from Kenneth Jackson to Officer Palmer | 5BBC00001961-5BBC00001962 |
| 19 | Parade Permit, issued to Kenneth Jackson | 5BBC00011274 |
| 20 | E-mail, dated Nov. 28, 2006, from Josh Gosciak to Danny Lieberman | 5BBCEM00005237-5BBCEM00005238 |
| 21 | E-mail, dated November 28, 2006, from James Zisfein to Josh Gosciak and Danny Lieberman | 5BBCEM00005236 |
| 22 | Records related to Sharon Blythe arrest | 5BBC00007841; NYC002102-NYC002104; NYC001350; NYC001346; 5BBC00011314-5BBC00011317 |
| 23 | Current 5BBC Bylaws | DeFreitas Ex. 2 |
| 24 | Past 5BBC Bylaws | DeFreitas Ex. 1 |
| 25 | 5BBC sign-in sheets | 5BBC00004222-5BBC00004228; 5BBC00004365-5BBC00004369; 5BBC00004983-5BBC00004989; 5BBC00009523-5BBC00009527 |
| 26 | E-mail, dated July 21, 2006, from Edward DeFreitas to James Zisfein and B. Hoberman | 5BBCEM00018066-5BBCEM00018069 |
| 27 | 5BBC Bulletin Board message, dated Nov. 12, 2006, by E. DeFreitas | DeFreitas Ex. 16 |
| 28 | 5BBC Bulletin Board message dated November 13, 2006, by John T. Chiarella | DeFreitas Ex. 17 |
| 29 | NYPD Flyer | NYC000331 |
| 30 | NYPD Flyer | NYC000289 |
| 31 | Records related to Elizabeth Shura arrest | NYC012904; 5BBC00010275-5BBC00010289; 5BBC00010540-5BBC00010579; 5BBC00011307-5BBC00011313 |
| 32 | 34 Rules of the City of New York § 4-12 | N/A |
| 33 | E-mail, dated Aug. 27, 2004 from Paul J. Browne to Robert Lawson | NYCE010151-NYCE010152 |
| 34 | E-mail, dated Oct. 20, 2004, from Paul Browne to Graham Rayman | NYCE010134-NYCE010135 |

22960644v8

| 35 | E-mail, dated Oct. 26, 2004, from Paul Browne to Robert Laird | NYCE010124-NYCE010125 |
|----|----|----|
| 36 | E-mail, dated May 29, 2007, from Paul Browne to Chris Faherty | NYCE009864 |
| 37 | 2007 Montauk Century permits and related emails | 5BBC00011294-11300; 5BBC00011266-11268 |
| 38 | 2008 Montauk Century permits | 5BBC00011301-11306 |
| 39 | Mobile Reserve Event Action Plan 2005-05 for Critical Mass Demonstration, May 27, 2005 | NYC013078-NYC013081 |
| 40 | NYPD lesson plan | NYC029602-NYC029611 |
| 41 | Summonses, issued April 29, 2005 | NYC002167-NYC002171; NYC002361 |
| 42 | New York City Admin. Code § 19-176.1 | Paragallo Ex. 14 |
| 43 | Detail Roster/Assignment Sheet for Oct. 27, 2006 Critical Mass | NYC001758-NYC001768 |
| 44 | Letter, dated November 9, 2007, from Emily Mathieu to New York City Police Department, Midtown North Precinct | 5BBC00008557-5BBC00008560 |
| 45 | Letter, dated Nov. 13, 2007, from Emily Mathieu to Deputy Chief Paragallo | 5BBC00008554-5BBC00008555 |
| 46 | New York State Vehicle and Traffic Law § 1234 | N/A |
| 47 | Administrative Guide: Parade Permits Procedures, dated June 1, 2005 | NYC001401-NYC001408 |
| 48 | NYC Dept. of Transportation press release | 5BBCEM00045860-5BBCEM00045861 |
| 49 | NYC Dept. of Transportation 12- and 18-Hour Bicycle Screenline Counts, 2000-2008 | Beveridge Ex. 12 |
| 50 | Op ed, dated July 21, 2006, "Protests and the NYPD - Keeping Speech Free and Safe," Police Commissioner Raymond W. Kelly, N.Y. Post | Kelly Ex. 4 |
| 51 | Drafts of Amended Parade Permit Regulations | N/A |
| 52 | RNC Guidelines | NYC027370-NYC027410 |
| 53 | News article, dated Nov. 15, 2007, "Case is Dropped Against Crusading Street Performer," Anemona Hartcollis, N.Y. Times | Tuller Ex. 10 |
| 54 | Mobile Reserve Event Action Plan 2005-04 for Critical Mass Demonstration, April 29, 2005 | NYC012953-NYC012956 |

22

| 55 | Declaration, dated Feb. 23, 2007 of Thomas Graham | N/A |
|----|---|---|
| 56 | Intentionally Omitted | Intentionally Omitted |
| 57 | Freewheels Mission Statement | 5BBCEM00018302 |
| 58 | Summonses, issued for violation of 34 RCNY § 4-12(p)(3) | NYC002006; NYC001947; NYC002043; NYC002054; NYC002054.02; NYC002054.03; NYC002055; NYC002055.03; NYC002057; NYC002057.03; NYC002058.02; NYC002058.03; NYC002059; NYC002059.02; NYC025977; NYC027094.02; NYC027095.03; NYC027096.02; NYC027101; NYC027097.03; NYC001965 |
| 59 | Arrest Record for X.C. | NYC029045-NYC029050 |
| 60 | News article, dated Apr. 30, 2005, "At Least 18 Arrests Made in Tense Night of a Monthly Cycling Protest," Kareem Fahim & Jim Dwyer, N.Y. Times; News article, dated Dec. 22, 2005, "Police Infiltrate Protests, Videotapes Show," Jim Dwyer, N.Y. Times; News article, dated Feb. 24, 2006, "Aggressiveness Of Bike Chases Stirs Questions For the Police" Jim Dwyer, N.Y. Times | N/A |
| 61 | Intentionally Omitted | Intentionally Omitted |
| 62 | Memorandum, dated April 5, 2006, from Deputy Commissioner, Legal Affairs to Chief of Department | NYC025925 |
| 63 | Disorder Control Unit log entry, dated Nov. 27, 2006 | NYC012983 |
| 64 | NYPD Patrol Guide: "Turnover" Arrests Procedure, dated Jan. 1, 2000 | NYC018895-NYC018896 |
| 65 | Police Student's Guide - Maintaining Public Order, dated January 2005 | NYC012430-NYC012466 |
| 66 | PBMS Detail Request, dated May 23, 2007 | NYC002856-NYC002860 |
| 67 | E-mails, dated April 27, 2004, between Joan Scholvin and Liz Weinstein | NYCE008364-8368 |
| 68 | Summons, issued May 26, 2006, to Hugh McGlincy | NYC002563 |

23

| 69 | Records related to Madeline Nelson arrest on Feb. 25, 2005 | NYC001433; NYC028833-NYC028835; NYC002110-NYC002113; 5BBC00007743-5BBC00007757; 5BBC00008599-5BBC00008600 |
|----|----|----|
| 70 | Records related to Madeline Nelson arrest on Dec. 30, 2005 | NYC001432; 5BBC00007760-5BBC00007765 |
| 71 | Summons, issued Nov. 24, 2006, to Madeline Nelson | NYC002227 |
| 72 | Summons, issued May 30, 2008, to Madeline Nelson | 5BBC00011257-5BBC00011259 |
| 73 | DCU Event Action Plan, dated May 18, 2005 | NYC012792-NYC012795 |
| 74 | DCU Assignment Log, dated July 30, 2004-Dec. 28, 2007 | NYC012960-NYC012996 |
| 75 | 2008 Bike Month calendar | Scholvin Ex. 4 |
| 76 | 2004 draft Bike Month calendar | NYCE000248-NYCE000261 |
| 77 | E-mail, dated Oct. 20, 2004, from Paul Browne to campinile@nypost.com | NYCE010131 |
| 78 | Intentionally Omitted | Intentionally Omitted |
| 79 | Press clippings | NYCE012282-NYCE012286 |
| 80 | E-mail, dated Dec. 29, 2006, from Paul Browne to Barbara Chen | NYCE010482 |
| 81 | Intentionally Omitted | Intentionally Omitted |
| 82 | Aviation Unit Flight Data Sheet, dated Aug. 26, 2005 | NYC013046 |
| 83 | Aviation Unit Flight Data Sheet, dated July 29, 2005 | NYC013043-NYC013045 |
| 84 | Aviation Unit Flight Data Sheet, dated May 27, 2005 | NYC013042 |
| 85 | Aviation Unit Flight Data Sheet, dated April 29, 2005 | NYC013040-NYC013041 |
| 86 | Intentionally Omitted | Intentionally Omitted |
| 87 | Sheet listing alleged bicycling violations, dated May 18, 2007 | NYC000355 Albano (Feb 2008) Ex. 7 Paragallo (Jan 2009) Ex. 22 DeQuatro (Jan 2009) Ex. 8 Wagner (Oct 2008) Ex. 6 |
| 88 | Sheet listing alleged bicycling violations, final 2006 edition | NYC027202-NYC027209 |
| 89 | Sheet listing alleged bicycling violations, undated | NYC001345 |
| 90 | PBMS Detail Request, dated April 26, 2005 | NYC002715-NYC02724 |

24

| 91 | Detail Request Memoranda for Brooklyn Critical Mass dates in 2007 and 2008 | NYC013057-NYC013059; NYC013063-NYC013065; NYC013066-NYC013068; NYC013075-NYC013077; NYC027112-NYC027114; NYC013069-NYC013071; NYC027109-NYC027110; NYC013072-NYC013074 |
|---|---|---|
| 92 | Memorandum, dated May 25 2007, from Stephen Paragallo to Chief of Patrol | NYC002047-NYC002059 |
| 93 | Memorandum, dated June 29, 2007, from Stephen Paragallo to Chief of Patrol | NYC002060-NYC002072 |
| 94 | Memorandum, dated July 27, 2007, from Stephen Paragallo to Chief of Patrol | NYC002027-NYC002046 |
| 95 | Memorandum, dated Aug. 31, 2007, from Stephen Paragallo to Chief of Patrol | NYC002009-NYC002026 |
| 96 | Memorandum, dated Sept. 28, 2007, from Stephen Paragallo to Chief of Patrol | NYC001987-NYC002008 |
| 97 | Memorandum, dated Oct. 26, 2007, from Stephen Paragallo to Chief of Patrol | NYC001974-NYC001986 |
| 98 | Memorandum, dated Dec. 1, 2007, from Stephen Paragallo to Chief of Patrol | NYC001953-NYC001973; NYC002077-NYC002098 |
| 99 | Memorandum, dated Jan. 25, 2008, from Daniel McNulty to Chief of Patrol | NYC027951; NYC025964 |
| 100 | Memorandum, dated Feb. 29, 2008, from Daniel McNulty to Chief of Patrol | NYC027952; NYC025965 |
| 101 | Memorandum, dated Mar. 28, 2008, from Daniel McNulty to Chief of Patrol | NYC025966 |
| 102 | Memorandum, dated Apr. 25, 2008, from Daniel McNulty to Chief of Patrol | NYC025967 |
| 103 | Memorandum, dated May 30, 2008, from Daniel McNulty to Chief of Patrol | NYC025968-NYC025987 |
| 104 | Memorandum, dated June 27, 2008, from Steven Anger to Chief of Patrol | NYC025988-NYC025996 |
| 105 | Memorandum, dated July 25, 2008, from Steven Anger to Chief of Patrol | NYC026224-NYC026225 |
| 106 | Memorandum, dated Aug. 30, 2008, from Daniel McNulty to Chief of Patrol | NYC027118-NYC027130 |

25

| 107 | Memorandum, dated Sept. 24, 2004, from Michael Carbonaro to Chief of Patrol | NYC000287-NYC000288 |
|-----|---|---|
| 108 | Memorandum, dated Oct. 29, 2004, from James McCarthy to Chief of Patrol | NYC000346-NYC000347 |
| 109 | Memorandum, dated Feb. 25, 2005, from Anthony Mainolfi to Chief of Patrol | NYC000285-NYC000286 |
| 110 | Memorandum, dated Mar. 25, 2005, from Anthony Mainolfi to Chief of Patrol | NYC000283-NYC000284 |
| 111 | Memorandum, dated Apr. 29, 2005, from Anthony Mainolfi to Chief of Patrol | NYC000281-NYC000282 |
| 112 | Memorandum, dated May 27, 2007, from John Marchica to Chief of Patrol | NYC000280 |
| 113 | Memorandum, dated July 29, 2005, from Stephen Hughes to Chief of Patrol | NYC000278-NYC000279 |
| 114 | Memorandum, dated Aug. 26, 2005, from Raymond Potanovic to Chief of Patrol | NYC000276-NYC000277 |
| 115 | Memorandum, dated Sept. 30, 2005, from Ellen Chang to Chief of Patrol | NYC000274-NYC000275 |
| 116 | Memorandum, dated Oct. 28, 2005, from Ellen Chang to Chief of Patrol | NYC000272-NYC000273 |
| 117 | Memorandum, dated Nov. 25, 2005, from Raymond Potanovic to Chief of Patrol | NYC000270-NYC000271 |
| 118 | Memorandum, dated Dec. 30, 2005, from Stephen Hughes to Chief of Patrol | NYC000268-NYC000269 |
| 119 | Memorandum, dated Jan. 27, 2006, from Joseph Panarese to Chief of Patrol | NYC000265-NYC000267 |
| 120 | Memorandum, dated Feb. 24, 2006, from Stephen Hughes to Chief of Patrol | NYC000263-NYC000264 |
| 121 | Memorandum, dated Mar. 31, 2006, from Frank Dwyer to Chief of Patrol | NYC000261-NYC000262 |
| 122 | Memorandum, dated Apr. 28, 2006, from Raymond Caroli to Chief of Patrol | NYC026916-NYC026917 |
| 123 | Memorandum, dated May 26, 2006, from Stephen Hughes to Chief of Patrol | NYC000257-NYC000258 |
| 124 | Memorandum, dated June 30, 2006, from Joseph White to Chief of Patrol | NYC000255-NYC000256 |
| 125 | Memorandum, dated July 28, 2006, from Joseph White to Chief of Patrol | NYC000463-NYC000464 |
| 126 | Memorandum, dated Aug. 25, 2006, from Joseph White to Chief of Patrol | NYC000465-NYC000466 |
| 127 | Memorandum, dated Sept. 30, 2006, from Joseph White to Chief of Patrol | NYC000467-NYC000468 |

26

| 128 | Memorandum, dated Oct. 27, 2006, from Joseph White to Chief of Patrol | NYC000469-NYC000470 |
|-----|------------------------------------------------------------------------|---------------------|
| 129 | Memorandum, dated Nov. 24, 2006, from Joseph White to Chief of Patrol | NYC027030-NYC027031 |
| 130 | Memorandum, dated Dec. 29, 2006, from Joseph White to Chief of Patrol | NYC027032-NYC027033 |
| 131 | Memorandum, dated Jan. 26, 2007, from Joseph White to Chief of Patrol | NYC027034 |
| 132 | Memorandum, dated Feb. 23, 2007, from John Duffy to Chief of Patrol | NYC027035 |
| 133 | Memorandum, dated Mar. 30, 2007, from Edward Winski to Chief of Patrol | NYC027036-NYC027037 |
| 134 | Memorandum, dated Apr. 27, 2007, from Keith Cunningham to Chief of Patrol | NYC027038-NYC027039 |
| 135 | Memorandum, dated May 25, 2007, from Joseph White to Chief of Patrol | NYC027040-NYC027041 |
| 136 | Memorandum, dated June 29, 2007, from Keith Cunningham to Chief of Patrol | NYC001339-NYC001340 |
| 137 | Memorandum, dated July 27, 2007, from Edward Winski to Chief of Patrol | NYC001337-NYC001338 |
| 138 | Memorandum, dated Aug 31, 2007, from Joseph White to Chief of Patrol | NYC001341-NYC001342 |
| 139 | Memorandum, dated Sept. 28, 2007, from Keith Cunningham to Chief of Patrol | NYC001343-NYC001344 |
| 140 | Memorandum, dated Oct. 26, 2007, from Joseph White to Chief of Patrol | NYC001335A-NYC001336 |
| 141 | Memorandum, dated Nov. 30, 2007, from Joseph White to Chief of Patrol | NYC027042-NYC027043 |
| 142 | Memorandum, dated Dec. 28, 2007, from Edward Winski to Chief of Patrol | NYC027044-NYC027045 |
| 143 | Memorandum, dated Jan. 25, 2008, from Keith Cunningham to Chief of Patrol | NYC025933-NYC025934 |
| 144 | Memorandum, dated Feb. 29, 2008, from Keith Cunningham to Chief of Patrol | NYC025935-NYC025936 |
| 145 | Memorandum, dated Mar. 29, 2008, from Dennis DeQuatro to Chief of Patrol | NYC025937-NYC025938 |
| 146 | Memorandum, dated Apr. 26, 2008, from Dennis DeQuatro to Chief of Patrol | NYC025939-NYC025940 |

27

| 147 | Memorandum, dated May 30, 2008, from Commanding Officer, Ninth Precinct, to Chief of Patrol | NYC025941-NYC025942 |
|---|---|---|
| 148 | Memorandum, dated June 27, 2008, from Dennis DeQuatro to Chief of Patrol | NYC027046-NYC027047 |
| 149 | Memorandum, dated July 25, 2008, from Michael Carbonaro to Chief of Patrol | NYC026227-NYC026228 |
| 150 | Memorandum, dated Oct. 31, 2008, from Timothy Beaudette to Chief of Patrol | NYC027074-NYC027075 |
| 151 | Summons and verified complaint in NYC, et al v. Time's Up!, et al., March 18, 2006 | N/A |
| 152 | Demonstrative A – Bicycling-Related Summonsing Rate in 13th Precinct from Feb 1, 2006 - Feb 1, 2008 | N/A |
| 153 | Demonstrative B - Bicycling-Related Summonsing Rate 6 to 11 p.m. Brooklyn vs. Manhattan Critical Mass Days | N/A |
| 154 | Demonstrative C - Manhattan Critical Mass Arrests and Summonses Sep 2004 - Aug 2008 | N/A |
| 155 | Demonstrative D - Law Enforcement Action and Declining Participation in Manhattan Critical Mass Rides: Sept 2004 - Aug 2008 | N/A |
| 156 | Demonstrative E - Declining Participation in Manhattan Critical Mass Rides: Sept 2004 - Aug 2008 | N/A |
| 157 | DCU Command Post Log, dated Sept. 24, 2004 | NYC013090-NYC013093 |
| 158 | Command Post Log, dated Oct. 29, 2004 | NYC001879-NYC001882 |
| 159 | Command Post Log, dated Nov. 26, 2004 | NYC001883-NYC001884 |
| 160 | Command Post Log, dated Dec. 31, 2004 | NYC013086-NYC10388 |

28

| 161 | Command Post Log, dated Jan. 28, 2005 | NYC001885 |
|-----|---------------------------------------|-----------|
| 162 | Command Post Log, dated Feb. 25, 2005 | NYC001886-NYC001887 |
| 163 | Command Post Log, dated Mar. 25, 2005 | NYC001888-NYC001889 |
| 164 | Command Post Log, dated Apr. 29, 2005 | NYC001890-NYC001892 |
| 165 | DCU Command Post Log, dated Apr. 29, 2005 | NYC012936-NYC012939; Paragallo Ex. 10 |
| 166 | Command Post Log, dated May 27, 2005 | NYC001893-NYC001894 |
| 167 | Command Post Log, dated June 24, 2005 | NYC001895-NYC001896 |
| 168 | Command Post Log, dated July 29, 2005 | NYC001897-NYC001898 |
| 169 | Command Post Log, dated Aug. 26, 2005 | NYC001327-NYC001330 |
| 170 | Command Post Log, dated Sept. 30, 2005 | NYC001903-NYC001905 |
| 171 | Command Post Log, dated Nov. 25, 2005 | NYC001908 |
| 172 | Command Post Log, dated Jan. 27, 2006 | NYC001909-NYC001910 |
| 173 | Command Post Log, dated Feb. 24, 2006 | NYC001911-NYC001912 |
| 174 | Command Post Log, dated Mar. 31, 2006 | NYC001913-NYC001914 |
| 175 | Command Post Log, dated Apr. 28, 2006 | NYC001915-NYC001916 |
| 176 | Command Post Log, dated May 26, 2006 | NYC001917-NYC001918 |
| 177 | Command Post Log, dated June 30, 2006 | NYC001919-NYC001921 |
| 178 | Command Post Log, dated July 28, 2006 | NYC001922 |
| 179 | Command Post Log, dated Aug. 25, 2006 | NYC001923-NYC001924 |
| 180 | Command Post Log, dated Sept. 30, 2006 | NYC001925 |
| 181 | Command Post Log, dated Oct. 27, 2006 | NYC001926 |
| 182 | Video created by Stuart Desser on April 29, 2005 | 5BBCVID000001 |
| 183 | Video created by Eileen Clancy on March 18, 2007 | 5BBCVID000002 |

29

| 184 | Video available on New York Times website entitled "N.Y.C. Police Surveillance" | 5BBCVID000009 |
|-----|-----|-----|
| 185 | Video available on New York Times website entitled "Police Chase Cyclists" | 5BBCVID000010 |
| 186 | Video created by Stuart Desser on July 27, 2007 | 5BBCVID000012 |
| 187 | Video created by Stuart Desser on Sept. 28, 2007 | 5BBCVID000013 |
| 188 | Video created by Stuart Desser on Sept. 28, 2007 | 5BBCVID000014 |
| 189 | Video created by Vlad Teichberg on June 27, 2008 | 5BBCVID000016 |
| 190 | Video created by Brendan Neubauer on June 27, 2008 | 5BBCVID000018 |
| 191 | Video created by Steve Vaccaro on July 11, 2008 | 5BBCVID000019 |
| 192 | Video created by Leon Ivangoratsky on May 25, 2007 | 5BBCVID000076 |
| 193 | Video created by unknown videographer on June 29, 2007 | 5BBCVID000101 |
| 194 | Video created by TARU on April 29, 2005 | NYC008766 |
| 195 | Video created by TARU on Sept. 30, 2005 | NYC008773 |
| 196 | Video created by NYPD on Aug. 6, 2004 | NYC010976 |
| 197 | Audio clip created by TARU on June 27, 2008 | NYC026111 |
| 198 | Video compiled by Eileen Clancy including video created by Eileen Clancy, Bill DiPaola, Christopher Ryan, Phillip Josselyn and Elizabeth Press | 5BBCVID000102 |
| 199 | Video created by Eileen Clancy on Jan. 27, 2006 | 5BBCVID000103 |
| 200 | Video compiled by Eileen Clancy including video created by Elizabeth Press, Bill DiPaola and John Hamilton | 5BBCVID000104 |
| 201 | Video created by Steve Vaccaro on July 11, 2008 | 5BBCVID000021 |
| 202 | Video created by Steve Vaccaro on July 11, 2008 | 5BBCVID000022 |
| 203 | Video created by Steve Vaccaro on July 11, 2008 | 5BBCVID000023 |

30

| 204 | Video created by Steve Vaccaro on July 11, 2008 | 5BBCVID000025 |
|-----|-----|-----|
| 205 | Intentionally Omitted | Intentionally Omitted |
| 206 | Intentionally Omitted | Intentionally Omitted |
| 207 | Intentionally Omitted | Intentionally Omitted |
| 208 | Command Post Log, dated Nov. 24, 2006 | NYC001927-NYC001928 |
| 209 | Command Post Log, dated Dec. 29, 2006 | NYC001929 |
| 210 | Command Post Log, dated Jan. 26, 2007 | NYC027217 |
| 211 | Command Post Log, dated Feb. 23, 2007 | NYC001930 |
| 212 | Command Post Log, dated Mar. 30, 2007 | NYC001931-NYC001932 |
| 213 | Command Post Log, dated Apr. 27, 2007 | NYC001933 |
| 214 | Command Post Log, dated May 25, 2007 | NYC001934 |
| 215 | Command Post Log, dated June 29, 2007 | NYC001935-NYC001936 |
| 216 | Command Post Log, dated July 27, 2007 | NYC001937-NYC001938 |
| 217 | Command Post Log, dated Aug. 31, 2007 | NYC001939 |
| 218 | Command Post Log, dated Sept. 28, 2007 | NYC001940-NYC001941 |
| 219 | Command Post Log, dated Oct. 26, 2007 | NYC001942 |
| 220 | Command Post Log, dated Nov. 30, 2007 | NYC001943-NYC001944 |
| 221 | Command Post Log, dated Dec. 28, 2007 | NYC027218 |
| 222 | Command Post Log, dated Jan. 25, 2008 | NYC025959 |
| 223 | Command Post Log, dated Feb. 29, 2008 | NYC025960 |
| 224 | Command Post Log, dated Mar. 28, 2008 | NYC025961 |
| 225 | Command Post Log, dated Apr. 25, 2008 | NYC025962 |
| 226 | Command Post Log, dated May 30, 2009 | NYC025963 |
| 227 | Command Post Log, dated June 27, 2008 | NYC027219 |
| 228 | Command Post Log, dated July 25, 2008 | NYC026217 |

31

| 229 | Command Post Log, dated Aug. 29, 2008 | NYC027065-NYC027066 |
|---|---|---|
| 230 | Command Post Log, dated Sept. 26, 2008 | NYC027073 |
| 231 | Command Post Log, dated Oct. 31, 2008 | NYC027082-NYC027085 |
| 232 | Detail Roster/Assignment Sheet, dated Aug. 20, 2005 | NYC001587-NYC001599 |
| 233 | NYPD-Monitored Group Processions | NYC030643; NYC030652; NYC030671; NYC030680; NYC030684; NYC030688; NYC030708; NYC030713 NYC030716; NYC030736 |
| 234 | "Red Means Go" Report, dated May 20, 2001 | N/A |
| 235 | "Thinking Outside the Box" Report, dated July 2006 | N/A |
| 236 | Memorandum, dated December 29, 2006 from Stephen Paragallo to Chief of Patrol | NYC001946-NYC001952 |
| 237 | NYPD Details Roster/Assignment sheets for Critical Mass Ride, April 29, 2005 | NYC001517, NYC001525 |
| 238 | Demonstrative F, Exhibit to Assist A. Beveridge Testimony; Report of A. Beveridge, Nov. 11, 2008 | N/A |
| 239 | Video created by TARU on May 25, 2007 | NYC08786 |
| 240 | Bray v. NYC 2004 U.S. Dist LEXIS 25722 | Kelly Ex. 8 |
| 241 | Plaintiff's Responses and Objections to Defendants' Second Set of Interrogatories and Second Request for Production of Documents (Feb. 20, 2008) | Blythe Ex. 2 |
| 242 | Plaintiff Sharon Blythe's Amended Responses and Objections to Defendants' Second Set of Interrogatories and Second Request for Production of Documents (Jun. 19, 2008) | Blythe Ex. 3 |
| 243 | Bike Lift Photo | 5BBC00007834 Blythe Ex. 4 |
| 244 | Declaration of Sharon Blythe (Mar. 15, 2007) | Blythe Ex. 5 |

32

| 245 | Detail Roster/Assignment Sheets (Jun. 29, 2007) | NYC001815-NYC001826 Winski Ex. 10 |
|---|---|---|
| 246 | Affidavit of Joseph S. Caneco in Support of Plaintiffs' Motion for Preliminary Injunction (NYC v. Times Up!, Inc.) dated, Oct. 6, 2005 | Caneco Ex. 3 |
| 247 | Summons issued to T.R., dated Aug. 25, 2006 | Caneco Ex. 4 |
| 248 | Declaration of Elizabeth Shura (Mar. 19, 2007) | Shura Ex. 2 |
| 249 | Declaration of Kenneth Jackson (Mar. 21, 2007) | Jackson Ex. 1 |
| 250 | Parade Permit and Related Documents Issued to Elaine Brower | NYC012997-NYC013009 Smolka Ex. 1 |
| 251 | Parade Permit Application and Disapproval Documents of Edward Juarez | NYC013343-NYC013348 Smolka Ex. 2 |
| 252 | Testimony of Bruce Smolka in RNC Litigation (Jan. 9, 2007) | Smolka Ex. 6 |
| 253 | Compilation of Records Produced by Plaintiffs Related to RNC | 5BBC00001979- 5BBC00001980; 5BBC00001983- 5BBC00001984; 5BBC00001997 Smolka Ex. 7 |
| 254 | PBMS Detail Report, dated Oct. 27, 2004 | NYC002624-NYC002637 Smolka Ex. 9 |
| 255 | PBMS Detail Report, dated Sep. 23, 2004 | NYC002611-NYC002614 Smolka Ex. 13 |
| 256 | Testimony of Bruce Smolka in Bray (Jan. 9, 2007) | Smolka Ex. 14 |
| 257 | Memo book of Richard Evans dated, Sep. 28, 2007 | Evans Ex. 8 |
| 258 | NYPD Audio July 25, 2008 | NYC026226 |
| 259 | NYC Police Academy Training Memo | NYC027528-NYC027529 Turco Ex. 11A |
| 260 | 2008 NYC Cycling Map | Scholvin Ex. 1 |
| 261 | E-mail from Eric Furman to Joan Scholvin, dated March 11, 2004 | NYCE008483-NYCE008525 Scholvin Ex. 9 |
| 262 | E-mail from Joan Scholvin to Richard Gans, dated April 25, 2005 | NYCE000860-NYCE000862 Scholvin Ex. 10 |
| 263 | NYPD Detail Request, dated Aug. 18, 2005, Freewheels/Time's Up Operation | NYC030741-NYC030745 |
| 264 | NYPD Detail Request, dated Aug. 19, 2008, Times-Up Operation | NYC030747-NYC030751 |

33

| 265 | NYPD Detail Request, dated March 15, 2007, United Peace and Justice Anti-War March | NYC030752-NYC030763 |
|---|---|---|
| 266 | NYPD Escort Report #1078, Ground Zero Motorcycle Ride | NYC030782 |
| 267 | NYPD Detail Request, Father's Day Cycling Race | NYC030784-NYC030785 |
| 268 | NYPD Assignment Log, 2007 Memorial Bike Ride | NYC030789 |
| 269 | Plaintiffs' Second Set of Requests for Admissions Directed to Defendants (January, 3 2009) and Defendants' Responses and Objections to Plaintiff's Second Set of Request for Admissions Directed to Defendants (February 20, 2009) | N/A |
| 270 | Arrest with Parading In the Narrative Form 2004 to 2008.pdf | NYC030790-NYC030799 |
| 271 | Video created by Vlad Teichberg on June 27, 2008 plus embedded transcript | 5BBCVID000016 |
| 272 | Video created by Stu Desser on April 29, 2005 plus embedded transcript | 5BBCVID000001 |

Plaintiffs reserve the right to use or introduce into evidence any and all exhibits

on Defendants' exhibit list.

# VI. DEFENDANTS' EXHIBITS

| Exhibit # | Description | I.D./Bates |
|---|---|---|
| A | October 29, 2004 Manhattan Critical Mass Detail Request | NYC002624 |
| B | September 24, 2004 Manhattan Critical Mass footage | NYC008755 |
| C | May 27, 2005 Manhattan Critical Mass footage | NYC008768 |
| D | June 24, 2005 Manhattan Critical Mass footage | NYC008769 |
| E | August 29, 2008 Manhattan Critical Mass footage | NYC026827 |
| F | April 29, 2005 NYPD Handout to cyclists | NYC000290 |
| G | May 27, 2005 NYPD Handout to cyclists | NYC000321 |
| H | September 30, 2005 NYPD Handout to cyclists | NYC000323 |
| I | October 28, 2005 NYPD Handout to cyclists | NYC000324 |
| J | November 25, 2005 NYPD Handout to cyclists | NYC000325 |
| K | December 30, 2005 NYPD Handout to cyclists | NYC000326 |

34

| L | January 27, 2006 NYPD Handout to cyclists | NYC000327 |
|---|---|---|
| M | March 31, 2006 NYPD Handout to cyclists | NYC000328 |
| N | March 30, 2007 NYPD Handout to cyclists | NYC000039 |
| O | Footage of Professor Jackson's 2007 Columbia All-Night Bike Ride | 5BBCVID0000029 |
| P | Footage of Professor Jackson's 2007 Columbia All-Night Bike Ride | 5BBCVID0000030 |
| Q | Footage of Professor Jackson's 2007 Columbia All-Night Bike Ride | 5BBCVID0000031 |
| R | Footage of Professor Jackson's 2007 Columbia All-Night Bike Ride | 5BBCVID0000032 |
| S | Bulletin Board Posting | 5BBCEM00016175 |
| T | E-Mail from Danny Lieberman to Jim Zisfein | 5BBCEM00007350 |
| U | E-Mail from Alfredo Garcia to Jim Zisfein | 5BBCEM00001980 |
| V | E-Mail from Richard Conroy to Jim Zisfein | 5BBCEM00005661 |
| W | E-Mail from Ed Ravin to Jim Zisfein | 5BBCEM00005404 |
| X | Bulletin Board Posting | 5BBCEM00001669 |
| Y | Bulletin Board Posting | 5BBCEM00014192 |
| Z | May-June 2006 *Bicycletter* | 5BBCEM00003210 |
| AA | November- December 2006 *Bicycletter* | 5BBC00000319 |
| BB | Testimony of Transportation Alternatives | NYC001056 |
| CC | E-Mail from Elizabeth Shura to Christopher Ryan | 5BBCEM00019404 |
| DD | E-Mail from Brian McGloin to Elizabeth Shura | 5BBCEM00032380 |
| EE | E-Mail from Bob Castro | 5BBCEM00026038 |
| FF | Cue Sheet for Montauk Century Training Ride: Englewood Cliffs | 5BBC00000237 |
| GG | October 29, 2004 Critical Mass Negotiated Route | NYC000333 |
| HH | October 30, 2004 After Action Report | NYC000341 |
| II | Detail Request for "Shopping for Justice" Police Brutality March | NYC027921 |
| JJ | Sean Bell Verdict Demonstration After Action Report | NYC027316 |
| KK | Declaration of Ed DeFreitas | DeFreitas Exhibit 13 |
| LL | Declaration of Danny Lieberman | Lieberman Exhibit 1 |
| MM | Bulletin Board Posting | DeFreitas Exhibit 18 |
| NN | July 10, 2006 5BBC Board Meeting Minutes | 5BBCEM00004902 |
| OO | E-Mail between Danny Lieberman and Jim Zisfein | 5BBCEM00002801 |
| PP | Footage of Brooklyn Critical Mass ride on April 13, 2007 | 5BBCVID000028 |
| QQ | Footage of Brooklyn Critical Mass ride on July 11, 2008 | 5BBCVID0000087 |
| RR | Footage of Brooklyn Critical Mass ride on July 11, 2008 | 5BBCVID0000089 |
| SS | Footage of Brooklyn Critical Mass ride on July 11, 2008 | 5BBCVID0000090 |
| TT | Footage of Brooklyn Critical Mass ride on July 11, 2008 | 5BBCVID0000096 |
| UU | Footage of Brooklyn Critical Mass ride on July 11, | 5BBCVID0000097 |

35

|  | 2008 |  |
|---|---|---|
| VV | July-August 2004 *Bicycletter* | 5BBCEM00000611 |
| WW | August 29, 2008 Manhattan Critical Mass Detail Request | NYC027018 |
| XX | Declaration of Kenneth Jackson | Jackson Exhibit 1 |
| YY | July 30, 2004 Manhattan Critical Mass Footage | NYC008750 |
| ZZ | July 30, 2004 Manhattan Critical Mass Footage | NYC008751 |
| AAA | July 30, 2004 Manhattan Critical Mass Footage | NYC008752 |
| BBB | E-Mail from Madeline Nelson to Reverend Billy | 5BBCEM00040479 |
| CCC | E-Mail from Paul Browne | NYC009844 |
| DDD | E-Mail from Paul Browne to Edward Skyler | NYC010126 |
| EEE | Detail Request for "United Peace and Justice Anti-War March" | NYC030752 |
| FFF | After Action Report for "United for Peace and Justice" March | NYC030776 |
| GGG | Notice regarding "Ground Zero Motorcycle Ride" | NYC030782 |
| HHH | Request relating to "NYC Century Bike Tour" | NYC030783 |
| III | Detail Request for "Harlem Cycling Classic" | NYC030784 |
| JJJ | West 106th Street Safety and Bicycle Lane Project | Scholvin Exhibit 13 |
| KKK | Declaration of Hugh McGlincy | Layne Exhibit 7 |
| LLL | Declaration of Madeline Nelson | Nelson Exhibit 1 |
| MMM | Declaration of Josh Gosciak | Gosciak Exhibit 1 |
| NNN | Declaration of Luke Son | Son Exhibit 1 |
| OOO | Declaration of Edward Ravin | Declaration Accompanying Plaintiffs' Motion for a Preliminary Injunction |
| PPP | Demonstrative Exhibit A: 2004-2008 Ride Size Breakdown | N/A |
| QQQ | Demonstrative Exhibit B: Riders Per Year | N/A |
| RRR | Demonstrative Exhibit C: Average Riders Per Year | N/A |
| SSS | Plaintiffs' Responses and Objections to Defendants' Fourth Set of Interrogatories and Document Requests | N/A |
| TTT | Plaintiffs' Responses and Objections to Defendants' Fifth Set of Interrogatories | N/A |

Defendants reserve the right to use or introduce into evidence any and all exhibits on Plaintiffs' exhibit list.

## VIII. STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

Any objections not set forth herein will be considered waived absent good cause

36

shown.

Plaintiffs object to all or portions of the following exhibits listed by Defendants on grounds of hearsay: T, U, V, W, X, Z, AA, CC, DD, GG, MM, VV, BBB, CCC, DDD.

Plaintiffs object to all or portions of the following exhibits listed by Defendants on grounds of relevance: DD, BBB.

Defendants object to all or portions of the following exhibits listed by plaintiffs on the grounds of hearsay: 20, 21, 26, 27, 28, 31, 53, 57, 60, 79, 184, 185, 234, 235, 244, 248, 249, 271 and 272.

Defendants object to all or portions of the following exhibits listed by plaintiffs on the grounds of relevance: 59, 234, 235, 247, 271 and 272.

## IX. PLAINTIFFS' WITNESS LIST

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

| | |
|---|---|
| MADELINE NELSON | LT. DANIEL ALBANO |
| ANDREW A. BEVERIDGE | CHIEF STEVEN ANGER |
| HUGH MCGLINCY | DEPUTY COMMISSIONER PAUL BROWNE |
| GIDEON OLIVER | LT. JOSEPH S. CANECO |
| LUKE SON | DEPUTY INSPECTOR DENNIS DEQUATRO |
| EDWARD RAVIN | OFFICER RICHARD EVANS |
| ED DEFREITAS | JOAN SCHOLVIN |
| JOSH GOSCIAK | COMMISSIONER RAYMOND KELLY |
| JOHN PUCHER | SGT. MARK LAYNE |
| KENNETH T. JACKSON | CHIEF STEPHEN PARAGALLO |
| SHARON BLYTHE | CHIEF MICHAEL SCAGNELLI |
| ELIZABETH SHURA | BRUCE SMOLKA |

37

CHIEF JAMES TULLER
LT. LUIS TURCO
OFFICER KENNETH WAGNER
CAPTAIN EDWARD WINSKI

Plaintiffs' designations of deposition testimony appear in Appendix F. Plaintiffs object to the designated testimony of Steve Vaccaro in its entirety on the ground that it is irrelevant. Plaintiffs otherwise refer to and incorporate objections made by Plaintiffs' counsel during depositions and reserve the right to object to deposition testimony designated by Defendants.

## X. DEFENDANTS' WITNESS LIST

The witnesses listed below may be called at trial. No witness not identified herein shall be permitted to testify on either party's case in chief absent good cause shown.

| | |
|---|---|
| DENNIS GANNON | DANIEL LIEBERMAN |
| SAM CENTAMORE | ALFREDO GARCIA |
| THOMAS GRAHAM | JAMES ZISFEIN |
| KENNETH WAGNER | ED DEFREITAS |
| MARK LAYNE | PETER ENGEL |
| DENNIS DEQUATRO | STEVE VACCARO |

Defendants' designations of deposition testimony appear in Appendix G. Defendants refer to and incorporate objections made by Defendants' counsel during depositions and reserve the right to object to deposition testimony designated by Defendants.

## XI. RELIEF SOUGHT

### Proposed Form of Injunction

I.    Injunction Against Retaliatory and Selective Enforcement

38

A.      Defendants shall not discriminate in the enforcement of the Parade Rules, the New York State Vehicle and Traffic Laws, or Chapter 34 the Rules of the City of New York against any individual on the basis of actual or perceived affiliation with any bicycling group, organization or event. Defendants shall not subject participants in group bicycle rides to any different or heightened law enforcement other than that to which all other persons in New York City are subjected.

B.      Defendants shall not interfere with, or take any actions for the purpose of discouraging, any lawful group bicycle ride in any roadway or street that is open to non-motor vehicle traffic.

C.      Defendants shall not enforce New York State Vehicle and Traffic Law §1234 against any individual in the City of New York. Defendants shall issue a corrective notice to NYPD personnel responsible for enforcing traffic laws regarding the inapplicability of VTL §1234 in New York City and the right of bicyclists to occupy a lane of traffic.

D.      The presence or conduct of undercover or plainclothes officers at group bicycle rides shall not be counted or considered in determining whether a violation of law has occurred by participants in such rides.

**Record-keeping**

E.      Defendants shall record each instance where two or more bicyclists with an actual or perceived affiliation with a bicycling group, organization or event are surveilled, stopped or followed, and must maintain in one location information sufficient to ascertain with respect to each such instance: (1) the number of bicyclists ; (2) the basis for the surveillance, stop or following; (3) the date, time and location; (4) the names and identification numbers of the officers involved; (5) whether any warning, dispersal order, or summons was issued or an arrest was made, as well as the specific violations or

39

charges cited; and (6) any use of physical force, as well as resulting injuries to the bicyclists and/or officers and the circumstances that prompted the use of force.

F.      Defendants shall maintain in one location, segregated from other summonses, copies of all traffic summonses related to non-commercial bicycling.

G.      Defendants shall maintain in one location all copies of all detail rosters, command logs, arrest reports and/or supporting affidavits, and after-action reports and/or memos related to group bicycling events.

### Officer Training

H.      Defendants shall administer police academy and in-service training to NYPD personnel on the laws applicable to bicyclists and require officers to issue a command to stop to a bicyclist before making a traffic stop through physical force or contact.

I.      Subject to the provisions set forth below concerning the appointment of an Independent Monitor, an Independent Monitor shall review and evaluate all training currently provided or sponsored by the NYPD regarding group bicycle rides and procedures used by police in connection with policing group bicycle rides and conducting traffic stops of bicyclists. This review shall examine whether the training provided or sponsored by the NYPD effectively instructs officers (1) to comply with the requirements of Section I.A.-I, above, and Section II.A.-I., below, and (2) to ensure the safety of officers and bicyclists.

### Monitoring Compliance

J.      Defendants shall be subject to oversight by an Independent Monitor, to be appointed by the Court, who will monitor and report on Defendants' compliance with the injunctive relief provisions set forth herein. Defendants shall bear all costs of the Independent Monitor. The Monitor shall be an agent of the Court and may testify in this

40

case regarding any matter relating to the implementation, enforcement or dissolution of the injunctive relief herein granted. The Monitor shall not testify in any other litigation or issue statements or make findings with regard to any act or omission of the Defendants, or their agents or representatives, except as required or expressly authorized by the Court. The Monitor shall not be retained by any current or future litigant or claimant in a claim or suit against Defendants.

K.  Defendants shall provide the Monitor with full and unrestricted access to all staff, facilities and non-privileged documents (including databases) necessary to carry out the duties assigned to the Monitor. In the event of an objection, the Court shall make the final determination regarding access. In any instance in which the Defendants object to access, they must establish that the access sought is not relevant to monitoring the implementation of the injunctive relief ordered by the Court, or that the information requested is privileged and the interest underlying the privilege cannot be adequately addressed through the entry of a protective order. In any instance in which Defendants assert that a document is privileged, it must provide the Monitor with a privilege log describing the document and the privilege asserted. Other than as expressly provided herein, with respect to the Independent Monitor, this paragraph is not intended, and should not be interpreted to reflect a waiver of any privilege, which Defendants may assert against any person or entity other than the Independent Monitor.

L.  Each month, Defendants shall provide copies of records described in Section I.E.-G. to the Independent Monitor, notwithstanding a claim of privilege.

M.  The Monitor, *inter alia*, shall review and evaluate Defendants' compliance with Sections I.A.-I. and II.A.-I.

N.  During the first year after this order is entered, the Independent Monitor shall submit quarterly reports to the Court detailing the Defendants' compliance with and

41

implementation of the injunctive relief ordered by the Court. Thereafter, the Monitor shall submit such reports semiannually or more frequently as the Monitor deems appropriate.

O.     Within 90 days following entry of the Court's Order and every six months thereafter for a period of three years, the NYPD shall submit to the Court and the Monitor, with a copy to Plaintiffs, a status report delineating all steps taken during the reporting period to comply with each provision of the Order.

P.     While the Court maintains jurisdiction over this action, the Plaintiffs shall have access to all records and reports provided to the Monitor.

II.     Application of Parade Rules

A.     As applied to bicyclists, Defendants shall not enforce the Parade Rules requirement that "a recognizable group of 50 or more pedestrians, vehicles, bicycles or other devices moved by human power, or ridden or herded animals proceeding together upon any public street or roadway" is deemed a "parade." 38 Rules of the City of New York § 19-02(a).

B.     Defendants shall not enforce the provision of the Parade Rules requiring that the police commissioner may not grant a permit for the use of any street that is "subject to great congestion or traffic and is chiefly of a business or mercantile character" between 9 a.m. and 6:30 p.m. on all days except Sundays and holidays. NYCAC § 10-110(a)(2).

C.     Defendants shall not enforce the provision of the Parade Rules providing that permit applications must contain "the width of the roadway to be occupied by the parade." 38 Rules of the City of New York § 19-03(b)(2)(vii).

D.     Defendants shall not enforce the provision of the Parade Rules requiring that "the chief officer of any procession, parade or race, for which a permit may be

42

granted by the police commissioner, shall be responsible for the strict observance of all rules and regulations included in said permit." NYCAC § 10-110(a)(5).

E.      Defendants shall not enforce the provision of the Parade Rules that requires a parade permit application to include "the identity of any grand marshal or chief officer of the parade, his or her name, address and telephone number." 38 Rules of the City of New York § 19-03(b)(2)(x).

F.      Defendants shall not enforce the provision of the Parade Rules that prohibits all parades on Fifth Avenue in the borough of Manhattan, unless the parade was held at that location prior to July 27, 2001, when the Parade Rules became effective. 38 Rules of the City of New York § 19-04(d)(viii).

G.      Defendants shall not require that parade permit applications be notarized by the applicant.

H.      Defendants shall institute a web page with (1) an online form for submission of parade permit applications, (2) designation of one point of contact within NYPD with principal responsibility for the parade permit review process, as well as a separate point of contact for appeals.

I.      Defendants shall issue an Operations Order, to be distributed to all commands, instructing NYPD officers as to which provisions of the Parade Rules may not be enforced and identifying the specific point of contact for parade permit applications.

III.      Effective Date and Duration

A.      The Court's Order shall become effective upon filing. Except where otherwise specifically indicated, Defendants shall implement all provisions of the Court's order as soon as practicable and no later than 60 days after entry of the Order.

B.      The Court shall retain jurisdiction of this action for all purposes during the

43

term of the Order. At any time after both three years have elapsed since entry of the Order and substantial compliance with the terms of the Order have been maintained for 18 continuous months, Defendants may move to terminate the injunction. Any motion to terminate must detail all aspects of Defendants' compliance with each provision of the Order, supported by affidavits and supporting documentation. Plaintiffs shall have 90 days from receipt of the Defendants' motion to file any objections.

C. "Substantial compliance" means there has been performance of the material terms of the Order, including, but not limited to, Sections I.A.-I. and II.A.-I. Materiality shall be determined with reference to the overall objectives of the Order.

## Attorneys' Fees

A. To the extent Plaintiffs prevail in establishing their right to relief, Plaintiffs seek an award of reasonable attorneys fees and costs incurred in doing so, in an amount to be established pursuant to the submissions of the parties and, if necessary, a hearing before the Court.

Dated:  5/8/09

_____

U.S.D.J.

44